# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | : | |
| | : | **S1 12 Cr. 661 (SLT)** |
| | : | |
| -against- | : | |
| | : | |
| | : | |
| **MADHI HASHI,** | : | |
| | : | |
| DEFENDANT. | : | **SEPTEMBER 15, 2014** |

## DEFENDANT MADHI HASHI'S
## MEMORANDUM OF LAW

**MARK S. DEMARCO**
**KARLOFF C. COMMISSIONG**
**Attorneys for the Defendant**
*Madhi Hashi*
**2027 Williamsbridge Road**
**Bronx, NY 10461**
**(718) 239-7070**
**Email: MSDLaw@aol.com**

## INTRODUCTION

The defendant Madhi Hashi (hereinafter, "Defendant", "the defendant" or "Mr. Hashi") is charged in a 3-count Superseding Indictment, which accuses him, *inter alia*, of conspiring to provide material support to al-Shabaab, a designated terrorist organization, providing material support to al-Shabaab, and with using firearms during and in relation to violent crimes. The original Indictment was filed in this Court on or about October 18, 2012. This memorandum is in support of his motion to suppress the statements that he made to agents from the Federal Bureau of Investigation ("FBI") after his arrest.

## STATEMENT OF FACTS

On or about August 4, 2012, Mr. Hashi was arrested in Djibouti by Djiboutian soldiers and law enforcement agents. He was transported to and detained in a secret governmental facility in Djibouti City, Djibouti, where he was held until he was brought before this Court. During his imprisonment in Djibouti, he was held in a cramped prison cell that was poorly ventilated and incredibly hot.

As set forth in his affidavit and as will be discussed in further detail below, while detained in Djibouti and without ever having been informed of *any* of his rights, Mr. Hashi was interrogated for several days after his arrest by Djiboutian law enforcement and subsequently by a group consisting of Djiboutians and Americans, who defendant believed were representatives from The Joint Special Operations Command or the CIA. He was interrogated by the latter group for nearly two weeks in flagrant disregard of numerous Constitutional and other protections generally afforded to people in custody. In addition to witnessing the physical abuse of other inmates, including his co-defendant Ali Yasin Ahmed,  Mr. Hashi was repeatedly

2

threatened with physical abuse and was subjected to psychologically abusive treatment with an aim of obtaining compliance and extracting additional information.  Such conduct violated Mr. Hashi's Constitutional rights under *Miranda* v. *Arizona, 384 U.S. 436 (1966)*, and the *Fifth Amendment Due Process Clause*.  The Government has acknowledged this blatant violation by agreeing not to use the fruits of this illegal interrogation on the Government's direct case.

On or about September 15, 2012, agents from the Federal Bureau of Investigation arrived at the Djiboutian prison and, in a period spanning roughly seven days, repeated the interrogation of Mr. Hashi, extracting from him an inculpatory statement that the government intends to introduce in its case-in-chief.

We respectfully request that this Court issue an order precluding the use of Mr. Hashi's statements to the FBI for all purposes including, but not limited to: rebuttal, cross examination, introduction of any witness or evidence derived directly or indirectly from information provided by him during the interrogations.

3

## ARGUMENT

I.   **SINCE MADHI HASHI'S STATEMENT TO THE FBI WAS TAINTED BY HIS EARLIER, INVOLUNTARY AND COERCED STATEMENTS,  IT SHOULD BE SHOULD BE SUPPRESSED BY THIS COURT.**

A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given. *See Lynumn v. Illinois, 372 U.S. 528, 534 (1963).* Whether a confession is a product of coercion may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials. *See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); Green v. Scully, 850 F.2d 894, 901-02 (2d Cir.), cert. denied, 488 U.S. 945 (1988); see also Johnson v. Zerbst, 304 U.S. 458, 464 (1938)* (to determine whether defendant made "an intentional relinquishment or abandonment of a known right or privilege" courts must examine "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused").  Indeed, the Court must evaluate the totality of the circumstances to determine whether the defendant's will was overborne. *Id.* The factors to be considered include "the type and length of questioning, the defendant's physical and mental capabilities," and the conduct of the interrogator. *Alvarado, 882 F.2d at 649; see Anderson, 929 F.2d at 99.*  The prosecution has the burden of establishing by a preponderance of the evidence that a suspect waived his *Miranda* rights, and that his confession is truly the product of free choice. *See Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).*

In *Oregon v. Elstad, 470 U.S. at 314*, the Supreme Court made clear that the use of coercive and improper tactics in obtaining an initial confession may warrant a presumption of compulsion as to a second one, even if the latter was obtained after properly administered Miranda warnings. *See Westover v. United States, 384 U.S. 436, 494, 496-97 (1966) (companion*

4

*case to Miranda).*   In deciding whether a second confession has been tainted by the prior coerced statement, "the time that passes between confessions, the change in place of interrogations, and the change in identity of interrogators all bear on whether that coercion has carried over into the second confession." *Elstad, 470 U.S. at 310 (citing Westover).*   Further, Courts must look to the "twin rationales -- trustworthiness and deterrence --" to see whether suppression of the second statement would serve the general goal of deterring unlawful police conduct and the *Fifth Amendment* goal of assuring the receipt of trustworthy evidence. *Id. at 308.*

In the instant case, there can be no argument that Mr. Hashi's statements made from the date of his arrest until the arrival of the FBI were coerced with improper tactics and were made without him ever having been informed of *any* of his rights.  Moreover, nothing suggests that the taint clinging to defendant's initial statements were dissipated.

**Mahdi Hashi's Initial Post-Arrest Statements**

**August 4, 2012 - August 25, 2012**

On or about August 4, 2012, Mr. Hashi and his co-defendants were arrested by Djiboutian police and transported to a secret government facility located in Djibouti City, Djibouti.   From that day until on or about August 25, 2012, while detained in a secret Djiboutian facility under extremely harsh conditions, and without ever having been informed of *any* of his rights, Mr. Hashi was interrogated by Djiboutian law enforcement and later by a group consisting of men who identified themselves as Americans working with the Djiboutians.

In addition to witnessing his co-defendant and other inmates being physically beaten by the Djiboutians and hearing the constant physical torture of other inmates, Mr. Hashi was interrogated in flagrant disregard of numerous Constitutional and other protections generally afforded to people in custody. On many occasions, Mr. Hashi was subjected to physically and

5

psychologically abusive treatment with an aim of obtaining compliance and extracting additional information.  Furthermore, at no time prior to or during these interrogations was Mr. Hashi given *Miranda* warnings and at no time did he waive his rights.

Such conduct violated Mr. Hashi's Constitutional rights under *Miranda* v. *Arizona,* 384 *U.S. 436 (1966)*, and the *Fifth Amendment Due Process Clause*, rendering Mr. Hashi's statements, under the totality of the circumstances, involuntary as a matter of law.  In fact, the Government has acknowledged these blatant violations by agreeing not to use the fruits of these illegal interrogations on the Government's direct case.

**Madhi Hashi's Statement to the FBI**

On or about September 15, 2012, FBI agents arrived at the Djiboutian jail where Mr Hashi had been incarcerated since his arrest and questioned him for more than seven days, eliciting a lengthy statement that the government intends to introduce in its direct case. These statements made by Mr. Hashi to the FBI during these lengthy interrogation sessions,  must be suppressed since the *Miranda* warnings administered by the agents at the start of each interrogation session failed to overcome the "presumption of coercion" those warnings were designed to dispel.   Given the nature of the prior interrogations, something more than a simple *Miranda* warning was required to dispel the coercive taint of Mr. Hashi's first statement.

The proper administration of *Miranda* warnings will not necessarily rebut the presumption of compulsion as to a second admission that follows an initial, coerced confession. *Anderson, 929 F.2d at 102 (citing Oregon v. Elstad, 470 U.S. 298, 314 (1985)).*  Rather, "in deciding whether a second confession has been tainted by the prior coerced statement, 'the time that passes between confessions, the change in place of interrogations, and the change in identity of interrogators all bear on whether that coercion has carried over into the second confession.'"

6

*Id. (quoting Elstad, 470 U.S. at 314).* The Court must also evaluate whether suppression will serve to deter unlawful police conduct and advance the *Fifth Amendment* goal of assuring the receipt of trustworthy evidence. *Id. (citing Elstad, 470 U.S. at 308).*

"When a prior statement is actually coerced, [(1)] the time that passes between confessions, [(2)] the change in place of interrogations, and [(3)] the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." *Elstad, 470 U.S. at 310; see also United States v. Anderson, 929 F.2d 96, 102 (2d Cir. 1991)* (finding that the taint from an involuntary confession had not dissipated by the time defendant made a second confession because only a short time — the length of a car ride from an arrest site to the DEA office — had passed between the confessions and "the suspect was at all times in custody and under close police supervision with the same agents present on both occasions"); *United States v. Pichardo, No. 92 Cr. 354 (RPP), 1992 U.S. Dist. LEXIS 14248, 1992 WL 249964, at \*10 (S.D.N.Y. Sept. 22, 1992)* (finding that a prior involuntary statement tainted a second confession where only two-and-a-half hours passed between the confessions, the defendant remained in custody, and the same officer conducted the interrogation).

Although roughly three weeks elapsed between Mr. Hashi's first and second series of statements, he remained in custody under unduly harsh conditions at the Djiboutian jail. During this time, he witnessed and heard the physical torture of other inmates. He was also repeatedly threatened with physical and sexual abuse and was told that he would be beaten if he did not cooperate with the Americans. Although FBI agents conducted the interrogation, each session was attended by one of the Djiboutian agents who either participated in beatings or who threatened defendant with abuse. Indeed, the factors outlined in *Elstad* and *Anderson* point in favor of suppression here since a continuing presumption of compulsion applies to this second

statement to the FBI.   Defendant's statements to the FBI reflected an ongoing concern for his well being and his desperation to be removed from the unduly harsh conditions of his confinement

Moreover, while the mere failure to provide *Miranda* warnings prior to custodial interrogation does not render a post-warning statement inadmissible. *Elstad, 470 U.S. at 314,* there is an exception for cases "in which a deliberate, two-step strategy was used by law enforcement to obtain the post-warning confession." *United States v. Moore, 670 F.3d 222, 228 (2d Cir. 2012)* (citing *Seibert, 542 U.S. at 622* (Kennedy, J., concurring); *Carter, 489 F.3d at 536*).  In *Seibert*, the police who interrogated a woman suspected of arson intentionally refrained from advising her of her Miranda rights, then questioned her and elicited information and a near-confession. *542 U.S. at 604-05.*  After the initial interrogation, the police gave her Miranda warnings and obtained a signed waiver of her Miranda rights. *Id. at 605.*  The police then resumed questioning and confronted her with her pre-warning statements to elicit a full confession. Id.  The Supreme Court concluded that the police tactic had violated the suspect's *Fifth Amendment* rights with regard to the statement given both pre- and post-warning, but the five Justices did not agree on the proper test for whether the post-warning statements should be suppressed. See *id. at 611-12, 621.*  Four of the Justices in the majority agreed upon factors a court should analyze to determine whether the warning administered prior to the second statement was ineffective:

    (1)    the completeness and detail of the questions and answers in the first round of interrogation,

    (2)    the overlapping content of the two statements,

    (3)    the timing and setting of the first and the second,

(4)     the continuity of police personnel, and

(5)     the degree to which the interrogator's questions treated the first round as continuous with the first.

See *id. at 615*.  Justice Kennedy concurred in the outcome of the case, but concluded that the determinative fact was that the police had deliberately employed the two-step process "as a calculated way to undermine the Miranda warning." *Id. at 622* (Kennedy, J., concurring).  In his view, if a two-step process is used deliberately to undermine or circumvent Miranda, "postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made." *Id.*

The Second Circuit has adopted several principles governing the application of *Seibert* in this Circuit, notably that Justice Kennedy's concurrence in *Seibert* "is controlling." *Capers, 627 F.3d at 476*.  The Second Circuit has also held that a court applying *Seibert* should review the totality of the objective and subjective evidence surrounding the interrogations in order to determine deliberateness, and that the Government bears the burden of disproving by a preponderance of the evidence that the interrogator employed a deliberate two-step strategy to deprive the defendant of the protections afforded by the *Fifth Amendment*. *Id. at 479-80*.

These principles are to be applied using a straightforward two-step analysis: "First, was the initial statement, though voluntary, obtained in violation of the defendant's Miranda rights? If not, there is no need to go further." *United States v. Moore, 670 F.3d 222, 229 (2012)*. Second, if the initial statement was obtained in violation of the defendant's Miranda rights, the court must analyze whether "the government demonstrated by a preponderance of the evidence, and in light of the totality of the objective and subjective evidence, that it did *not* engage in a deliberate two-step process calculated to undermine the defendant's Miranda rights." *Id.*

9

The statements made by Mr. Hashi to the FBI were after a violation of *Miranda*, since he was not advised of any rights prior to or during any of the first series of interrogation sessions from August 4, 2012, through August 25, 2012.  Therefore, the burden is now on the Government to demonstrate that those statements were not part of a deliberate two-stage interrogation technique designed to undermine the rule set forth in *Miranda*.

## **CONCLUSION**

For the reasons set forth herein, defendant's motion should be granted in all respects

Dated: Bronx, New York
        September 15, 2014

_____

MARK S. DEMARCO
KARLOFF C. COMMISSIONG
Attorneys for the Defendant
***Madhi Hashi***
2027 Williamsbridge Road
Bronx, NY 10461
(718) 239-7070