

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EMN:SDD/SA/RMT
F. # 2012R01574

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 3, 2014

By Hand and ECF

Honorable Sandra L. Townes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ahmed, et al. 12 CR 661 (S1) (SLT)

Dear Judge Townes:

      The government respectfully submits this letter in response to the defendants' motions to suppress statements in connection with the above-referenced case. Control dates for a hearing on the defendants' motions currently is scheduled for December 2014. Prior to the hearing, the government expects to elicit testimony from multiple witnesses that will establish that the defendants validly waived their Miranda rights and that their statements to agents of the Federal Bureau of Investigation ("FBI") were voluntarily made, and are therefore admissible at trial. Copies of the statements in question are being filed separately under seal because they relate to ongoing national security investigations and are subject to the Protective Order previously entered in this case.

    I.    Background

      On or about August 5, 2012, defendants Ali Yasin Ahmed, Mohamed Yusuf and Madhi Hashi were captured by foreign government officials as they surreptitiously transited a foreign country in East Africa, in violation of that country's immigration laws, on their way from Somalia to Yemen. Foreign authorities detained the defendants because they suspected that the men were terrorists and that they therefore posed a threat to their national security. The foreign officials interrogated the defendants for several days. Subsequently, between approximately August 21, 2012 and September 5, 2012, the foreign authorities permitted a group of American investigators to meet with the defendants and conduct a series of intelligence interviews. During these interviews by U.S. investigators, the defendants were not advised of their Miranda rights because the purpose of the interviews was to collect intelligence relating to potential, possibly imminent, threats to the United States and its allies.

Following the U.S. intelligence interviews, two FBI agents, who were not privy to the information that had been obtained from the prior interviews of the defendants, met with the defendants and advised them of their Miranda rights. Each of the defendants expressly waived Miranda and provided extensive statements to the FBI, which included detailed admissions of the defendants' membership in al-Shabaab and personal participation in various terrorist activities. Each of the FBI's Mirandized law enforcement interviews of defendants commenced several days after the conclusion of the U.S. intelligence interviews.

Based in part on the defendants' admissions to FBI agents, on October 17, 2012, a grand jury in the Eastern District of New York returned an indictment charging the defendants with conspiring to provide material to al-Shabaab, a designated Foreign Terrorist Organization ("FTO"), in violation of Title 18, United States Code, Section 2339B; and using a machinegun in furtherance of a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 924(c)(1)(B)(ii).

On November 17, 2012, the defendants were transferred from the custody of foreign authorities to the FBI, at which time they were placed under arrest. The FBI then transported the defendants to the Eastern District of New York to face the pending charges. On that same day, a grand jury in the Eastern District of New York returned a superseding indictment, adding a substantive charge of providing material support to al-Shabaab, in violation of Title 18, United States Code, Section 2339B. The defendants were arraigned upon their arrival in the United States and, since then, the government has produced both classified and unclassified discovery materials to defense counsel, on a rolling basis.

By written motion dated September 16, 2014, defendant Madhi Hashi moved to suppress his admissions to FBI agents. (See ECF No. 99). By motions dated September 19, 2014, defendants Ali Yasin Ahmed and Mohamed Yusuf also moved to suppress their respective admissions to FBI agents. (See ECF Nos. 100, 101). In sum, each of the defendants argues that their confessions to the FBI were involuntarily obtained in violation of the Fifth Amendment and the Supreme Court's guidance in Oregon v. Elstad, 470 U.S. 298 (1985), and Miranda v. Arizona, 384 U.S. 436 (1966), because of the abusive conditions under which they were held and interrogated by foreign authorities. The defendants also argue that the constituting the fruits of their admissions should be suppressed. In addition, on September 26, 2014, defendant Mohamed Yusuf amended his motion to further allege that his arrest by American officials overseas was unlawful "because it was not supported by probable cause, and that there was insufficient attenuation between the defective arrest and his questioning by and making of statements to American officials to dissipate the Fourth Amendment taint." (ECF No. 103).

II.     Applicable Law

The admissibility of a confession taken by United States officials abroad is governed by the Fifth Amendment. See In re Terrorist Bombings of US. Embassies in East Africa, 552 F.3d 177, 198 (2d Cir. 2008) ("[T]he admissibility at trial of statements made to U.S. Agents by foreign nationals held in foreign custody is governed by the Fifth Amendment."). A defendant challenging the voluntariness of a confession has a right to "a fair hearing and a reliable determination on the issue of voluntariness." Jackson v. Denno, 378 U.S. 368, 377 (1964); see also 18 U.S.C. § 3501(a) (when a confession is offered, "the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness"). To establish that a defendant validly waived Miranda rights, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving the right." United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995). As with the related question of whether a confession is itself voluntary, the determination of whether suspects have knowingly and voluntarily waived their Miranda rights depends upon the totality of the circumstances. See Fare v. Michael C. 442 U.S. 707, 725 (1979).

As a general matter, the most relevant circumstances include "1) the accused's characteristics, 2) the conditions of the interrogation, and 3) the conduct of the police." In re Terrorist Bombings, 552 F.3d at 213. The relevant characteristics of the accused include his age, experience, education, intelligence and background. Green v. Scully, 850 F.2d 894, 901-2 (2d Cir. 1988). The relevant conditions of the interrogation include the length of detention and place of questioning. The relevant conduct of law enforcement includes the nature of the questioning, whether the accused was informed of his constitutional rights, whether there was any physical mistreatment, whether there were other physical deprivations, such as deprivation of food, water or sleep, and whether the interrogation included psychologically coercive tactics. Id. at 902. "[T]he situation surrounding the giving of a confession may dissipate the import of an individual factor that might otherwise have a coercive effect." Id.

The Supreme Court has held that, even where a confession is made in facially noncoercive circumstances, it may nevertheless be held involuntary due to continued "taint" emanating from earlier coercion. In Oregon v. Elstad, 470 U.S. 298, 310 (1985), the Court stated that, "[w]hen a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." Overall, the "voluntary or involuntary character" of a confession taken subsequent to coercion is determined by asking "whether the accused, at the time he confesses, is in possession of 'mental freedom' to confess to or deny a suspected participation in a crime." Lyons v. Oklahoma, 322 U.S. 596, 602 (1944).

3

The "taint" analysis in cases involving prior interrogations by foreign authorities is similar, and courts have acknowledged that arguably coercive interrogations do not necessarily preclude subsequent voluntary statements to U.S. law enforcement authorities.  See, e.g., In re Terrorist Bombings, 552 F.3d at 211-13 (Mirandized statements admissible despite defendant's lengthy interrogation in potentially coercive conditions in Kenya); id. at 211-15 (statements by defendant admissible despite professed fear of torture by Kenyans); United States v. Bin Laden, 132 F. Supp. 2d 168, 186-87 (S.D.N.Y. 2001) ("None of this is to say that American law enforcement representatives . . . should always be responsible for the acts of a foreign sovereign.  Rather, our point is . . . that the inherent coercion associated with any custodial interrogation is a specter that haunts all confessions later gleaned therefrom."); United States v. Yousef, 925 F. Supp. 1063, 1077 (S.D.N.Y. 1996) (defendant made knowing and voluntary waiver of his rights despite alleged continuing effects of mistreatment by foreign government authorities), aff'd by United States v. Yousef, 327 F3d 56,122-27 (2d Cir. 2003).

"When an initial confession is obtained without the required Miranda warnings, the government is not precluded from introducing a subsequent confession obtained after the warnings have been properly administered."  United States v. Zubiate, No. 08 CR 507 (JG), 2009 WL 483199, at *8 (E.D.N.Y. Feb. 25, 2009) (citing Oregon v. Elstad, 470 U.S. 298, 318 (1985)).  In addition, an exception to the Elstad rule was carved out in Missouri v. Seibert, 542 U.S. 600 (2004) (plurality opinion).  In Seibert, the Court held that a "midstream warning," in which police deliberately interrogate a suspect without giving Miranda warnings until the suspect makes a confession, and then shortly thereafter provide the defendant with his Miranda warnings before eliciting the same confession again as part of a premeditated strategy, renders the second statement constitutionally inadmissible because it does not fulfill the goals of Miranda.  In Seibert, the Court explained that the "threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function effectively as Miranda requires."  Id. at 611-12 (internal quotation marks omitted).

The Court set forth five factors (the "Seibert factors") to consider in addressing this "threshold issue:"

> (1) the completeness and detail of the questions and answers in the first round of interrogation;
>
> (2) the overlapping content of the two statements;
>
> (3) the timing and setting of the statements;
>
> (4) the continuity of police personnel; and
>
> (5) the degree to which the interrogator's questions treated the second round as continuous with the first.

Id. at 615.

The Second Circuit has adopted a two-stage inquiry for use in determining whether Mirandized statements are admissible when a defendant was questioned by officials prior to receiving a Miranda warning. First, a court must determine whether the government has demonstrated, by a preponderance of the evidence, that it did not "engage in a deliberate two-step process calculated to undermine the defendant's Miranda rights." United States v. Moore, 670 F.3d 222, 230 (2d Cir. 2012). If the government demonstrates that it did not engage in that "deliberate two-step process," then the statement is admissible if it was voluntary. Id. Otherwise, "the post-warning statement must be suppressed unless curative measures (designed to ensure that a reasonable person in the defendant's position would understand the import and effect of the Miranda warnings and waiver) were taken before the defendant's post-arrest statement." Id. "Such 'curative measures' are those designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the Miranda warning and of the Miranda waiver." Id. (citing Seibert, 542 U.S. at 622). Those curative measures could include "a substantial break in time and circumstances between the prewarning statement and the Miranda warning." Id.

In determining whether the government engaged in a deliberate two-step interview process, a court must "review the totality of the objective and subjective evidence surrounding the interrogations . . . with a recognition that in most instances the inquiry will rely heavily, if not entirely, upon objective evidence." United States v. Capers, 627 F.3d 470, 479 (2d Cir. 2010). In addition, the court should consider "whether suppression of the second statement would serve the general goal of deterring unlawful police conduct and the Fifth Amendment goal of assuring the receipt of trustworthy evidence." United States v. Anderson, 929 F.2d 102 (2d Cir. 1991).

III.    Argument

Here, there is no dispute that the defendants expressly waived their Miranda rights in the context of the FBI interviews and signed waiver forms memorializing the relinquishment of their respective rights. The question before the Court is whether such waivers and subsequent admissions were voluntarily made under the totality of the circumstances. Based on the information available to the government at this time, the government expects to establish, through the testimony of multiple witnesses with first-hand knowledge of the defendants' detention and overseas interrogation, that the defendants' waivers were knowing and voluntary and that their admissions to FBI agents, as memorialized in the FD-302 reports filed separately under seal, were similarly voluntary and therefore admissible at trial. In addition, the government will establish that the defendants' arrest by the FBI agents was fully supported by probable cause, and that any evidentiary fruits of their arrest and voluntary admissions are admissible. The government will promptly file notice of its intent to call witnesses in connection with responding to the defendants' allegations, as well as any related motions, and will confer with the Court's deputy and counsel for the defendants as to proposed dates for the anticipated testimony to be taken in advance of the hearing on the defendants' motions. Following the testimony, the government will submit a post-hearing brief, fully addressing each of the defendants' arguments based on the sworn testimony in the record.

IV.     Conclusion

For the reasons set forth above, the government expects to establish through the testimony of multiple witnesses that the defendants' admissions to the FBI were voluntarily made under the totality of the circumstances, and are therefore admissible, and that their arrest by U.S. law enforcement agents was supported by probable cause and was entirely lawful.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:     /s/ Seth D. DuCharme
Shreve Ariail
Seth D. DuCharme
Richard M. Tucker
Assistant U.S. Attorneys

cc: All defense counsel of record, via ECF and e-mail