UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────

UNITED STATES OF AMERICA,

    - against -

ALI YASIN AHMED,
    also known as "Ismail,"
MADHI HASHI,
    also known as "Tahlha," and
MOHAMED YUSUF,
    also known as "Abu Zaid,"
    "Hudeyfa" and
    "Mohamed Abdulkadir,

    Defendants.
───────────────────────────────

Cr. No. 12-661(S-1) (SLT)

───────────────────────────────
OPPOSITION TO GOVERNMENT'S MOTION FOR AN ANONYMOUS JURY
ON BEHALF OF DEFENDANT MOHAMED YUSUF
───────────────────────────────

JANE SIMKIN SMITH
P.O. Box 1277
Millbrook, New York 12545
(845) 724-3415
jssmith1@optonline.net

DAVID STERN
Rothman, Schneider, Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-5500
dstern@rssslaw.com

ATTORNEYS FOR MOHAMED YUSUF

OPPOSITION TO GOVERNMENT'S MOTION FOR AN ANONYMOUS JURY
ON BEHALF OF DEFENDANT MOHAMED YUSUF

Though the government proclaims that anonymous juries are "routinely used in many prominent terrorism cases," jury anonymity is supposed to be the exception not the rule. Using an anonymous and partially sequestered jury risks alarming the jurors and infringing on the defendant's constitutional rights. These procedures are expensive and cumbersome, and should not be used unless an anonymous jury is "genuinely called for." This means that the government must make a "strong showing" that the jurors actually need protection from a real threat of violence, intimidation, or harassment, or from a reasonable fear for their individual safety – not a fear ginned up by the government's rhetoric. *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991) (summarizing cases).

In order to ascertain whether anonymity and sequestration are genuinely called for, the Court is required to give the government's showing close scrutiny. Here, the government's showing is nothing but bluster. It begins with the provocative terms "terrorist activity" and "terrorism", fans the flames with reports about the activities of and threats by associates of al-Shabaab half a world away, and spices things up with hyperbolic characterizations about the extent and significance of the media coverage the case has received and can be anticipated to receive. If the Court gives this case the close scrutiny required by law, however, what it finds is three men who have been completely isolated from their friends and associates since 2012 when they were locked in a cell under SAMs thousands of miles from their families with no ability to orchestrate any violence directed towards or intimidation of any jurors, minimal coverage of the case by the press, and no indication whatsoever that anyone currently alleged to be associated with al-Shabaab has the slightest interest in this case. In short, it has shown nothing to cause an

1

objective concern for juror safety, or any reason for potential jurors to have any concern for their safety except the government's own fear mongering.

Invocation of the words "terrorist" or "terrorism" or "terrorist organization"– like the words "organized crime," "mob" or Mafia" – is not enough. Before the defendant's connection to a violent organization may be considered a factor in deciding whether to order an anonymous jury, there must be more than "the innuendo that this connection conjures up"; the government must show "something more". *United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991). The government has not shown there is any threat to juror safety beyond the rhetoric of "terrorism."

As set forth in the footnote below, though one would not know it from reading the government's memo, in each of the *eighteen* cases that the government cites as the applicable law in this area, the government presented substantial evidence of the defendants' or their close associates' history of and willingness to obstruct or tamper with the judicial process.[1]  In all but

---

[1] The cases cited in the Government's Memo at 13 are:
- *United States v. Kaziu,* 559 F. App'x 32, 37 (2d Cir. 2014) (government proffers "efforts of one of Kaziu's relatives to tamper with a witness");
- *Untied States v. Arillotta,* 529 F. App'x 81, 83 (2d Cir. 2013) ("Defendants were charged with murder for the obstruction of justice");
- *United States v. Ibrahim,* 529 F. App'x 59, 65 n.3 (2d Cir. 2013), and related case *United States v. Kadir,* 718 F.3d 115, 121 (2d Cir. 2013) ("threats to the judicial system itself, including alleged threats by [defendant] against his own attorney and potential trial witness");
- *United States v. Pica*, 629 F.3d 79, (2d Cir. 2012) ("history of jury tampering");
- *United Stats v. Quinones,* 511 F.3d 289 295 (2d Cir. 2007) ("government demonstrated a defendant's willingness to tamper with the judicial process");
- *United States v. Gotti,* 459 F.3d 296, 346 (2d Cir. 2006)  ("indictment itself charged two defendants with witness tampering in connection with grand jury testimony");
- *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995) (government proffered evidence of jury tampering solicitation by defendants while they were in pretrial detention, and attempts by defendants to influence a witness in a prior state prosecution);
- *United States v. Wong,* 40 F.3d 1347, 1376-7 (2d Cir. 1994) (pretrial proffer -- borne out by evidence at trial – that gang had "a history of interfering with the judicial process," and  "gang members continued to seek to silence potential witnesses against them");
- *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) ("evidence of defendants' acts of

2

intimidation toward their crime victims, their attempts to kill certain of those victims, and the murder of Sen Van Ta because of his refusal to retreat from his complaints to the police.");

- *United States v. Amuso*, 21 F.3d 1251, 1264-5 (2d Cir. 1994) ("crimes charged also showed that Amuso was willing to interfere with the judicial process by murdering government witnesses and, as head of the Luchese crime family, it was certainly reasonable to expect that Amuso had the means to interfere with the jurors if he so desired.");
- *United States v. Locascio,* 6 F.3d 924, 947 (2d Cir. 1993) ("reason for sequestration was the potential for tampering, specifically … the government's evidence of previous instances of jury tampering by Gotti and his associates");
- *United States v. Paccione*, 949 F.2d 1183, 1192-3 (2d Cir. 1991) (sufficient reason for empaneling an anonymous jury found to exist where the defendants "'were alleged to be very dangerous individuals engaged in large-scale organized crime who had participated in several "mob-style" killings,' and there was *`strong evidence of defendants' past attempts to interfere with the judicial process, and defendants were alleged to be part of a group that possessed the means to harm jurors*'";
- *United States v. Vario*, 943 F.2d 236, 240 (2d Cir. 1991) ("Although Vario may not have personally spoken to the grand jury witness, his co-conspirator took the act in furtherance of the conspiracy. …[T]his event demonstrated the willingness of the conspirators to tamper with the judicial process.") (Citations omitted);
- *United States v. Tutino,* 883 F.2d 1125, 1132-33 (2d Cir. 1989) (history of jury tampering attempt when coupled with defendant's serious criminal records, was sufficient to justify the empaneling of an anonymous jury: "The Government made a substantial showing that there was a risk of jury tampering. In particular, the Government submitted affidavits demonstrating that at least three jurors in a prior narcotics case had been approached to acquit Tutino and his co-defendants, and that Tutino was personally involved in the jury tampering.");
- *United States v. Persico*, 832 F.2d 705, 717-18 (2d Cir. 1987) ("Judge Keenan based his decision on `the violent acts alleged to have been committed in the normal course of Colombo Family business, the Family's willingness to corrupt and obstruct the criminal justice system, and the extensive publicity this case is expected to continue to attract.' *Persico*, 621 F. Supp. at 879."); *United States v. Persico,* 1994 U.S. Dist. LEXIS, * 7 (EDNY 1994) ("In this case, concerns about juror safety, potential tampering, and press coverage are sufficiently strong to warrant the empaneling of an anonymous jury and its partial sequestration. A reliable confidential source has advised agents of the Federal Bureau of Investigation that a high ranking member of the Persico faction has said that efforts would be made to tamper with the jury in order to avoid a conviction of these defendants.");
- *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985) (justifying use of anonymous jury because charges in the indictment "accused the defendants of attempts to interfere with the judicial process by murdering government witnesses" and "strong evidence of defendants' past attempts to interfere with the judicial process, and defendants were alleged to be part of a group that possessed the means to harm jurors."); (defendants members of violent gang with a history of interfering with the judicial

3

two of the eighteen (related cases stemming from the same indictment charging a plot to blow up oil pipelines and jet fuel tanks at nearby JFK Airport, *see United States v. Kadir,* 718 F. 3d 115 (2d Cir. 2013), and *United States v. Ibrahim*, 529 Fed. Appx. 59 (2d Cir. 2013)), the evidence of obstruction was deemed critical to the determination that the jury was in need of protection and that an anonymous jury was warranted.[2] Indeed, in *Vario*, 943 F.2d at 240, the Second Circuit wrote, "*An obstruction of justice charge, particularly one involving jury tampering, has always been a crucial factor in our decisions regarding anonymous juries.*" (Emphasis added.)

The lesson of these cases is that "something more" means a "*demonstrable history or likelihood of obstruction of justice* on the part of the defendant or others acting on his behalf" or "a showing that trial evidence will depict a pattern of violence by the defendants and his associates such as would cause a juror *reasonably to fear for his own safety*." *Vario*, 943 F.2d at 241 (emphasis added). The government has not demonstrated anything of the sort here.

Its entire premise is that, because this case involves charges relating to al-Shabaab, the "potential threat in this case is real," "the judicial process is at risk," and jurors need protection from "inappropriate contact by the press." (Govt. Memo at 3, 16-18) However, instead of presenting any evidence of obstruction, tampering, or other kind of interference with the judicial process by the defendants or by any person with whom they are shown to be associated, it simply

---

process by continuing to seek potential witnesses against them)
- *United States v. Barnes*, 604 F.2d 121, 135 & n. 3 (2d Cir. 1979) ("'sordid history of [attempts at influencing witnesses and jurors in] multi-defendant narcotics cases tried in the Southern District was sufficient to put the trial court on notice that all safety measures possible should be taken for the protection of prospective jurors.'")

[2] In *Kadir* and *Ibrahim*, the Circuit held that, given the serious nature of the charge to explode pipelines and fuels tanks "in order to kill countless Americans and other travelers, disrupt air travel, and harm the American economy," the district court reasonably concluded that the jurors would be fearful if their identities were revealed to the defendants and did not abuse its discretion in empaneling an anonymous jury.

4

invokes the specter of al-Shabaab – an organization that, it submits, has committed "unlawful violence upon innocent civilians in the Horn of Africa" and has "promised to seek revenge for the death of their leader, who was killed this past September, reportedly in a U.S. airstrike;" it contends that *any* historic association by the defendants with al-Shabaab warrants an anonymous jury. This is precisely the kind of reasoning rejected by the Second Circuit in *United States v. Vario,* 943 F.2d at 240-1.

This case admittedly involves serious charges, including charges involving firearms. And the government has certainly been able to dredge up both a handful of news articles (most of which either followed on the heels of, or echoed, the USDOJ/EDNY U.S. Attorney's Office press release of December 12, 2012, announcing *and exaggerating* the charges in the indictment – as set forth in the footnote below),[3] as well as a scattering of social media entries reflecting concern by family members in the U.K. about the treatment of defendant Mahdi Hashi. (Ironically, one of the articles it cites, published online at *Salon.com* in September 2013, begins with a lament about the *paucity* of news coverage in this case!)

But the defendants' crimes allegedly took place years ago in the Horn of Africa and had nothing to do with the United States. The government utterly fails to present an iota of evidence suggesting that the defendants ever engaged in any violence in the U.S., or targeted the U.S., or

---

[3] U.S. Attorney Loretta Lynch is quoted in the press release as stating, "As alleged in the indictment, the defendants were committed supporters of al-Shabaab, a violent terrorist organization, who used high-powered firearms and participated in combat operations and al-Shabaab's suicide bombing program…." George Venizelos, Assistant Director in Charge of the FBI's NY Field Office, is quoted as stating, "As alleged, these defendants are not aspiring terrorists, they are terrorists. They did more than receive terrorist training: they put that training to practice in terrorist operations with al-Shabaab…" Both Ms. Lynch and Mr. Venizelos provided misinformation to the public and the press: There are **no** allegations in the indictment that defendants were "committed supporters of al-Shabaab", that they "participated in combat operations" or "al-Shabaab's suicide bombing program," received "terrorist training," "put that training to practice in terrorist operations with al-Shabaab," or that they are "terrorists."

5

have the capacity to do so now. Despite the enormous capacity of the government, its national security apparatus, and the cooperation of experts such as Evan Kohlmann who professes an extraordinary capacity to unearth information on the deep, dark, web, the government has also failed to present even the slightest bit of internet or phone chatter suggesting that anyone connected with either the defendants or al-Shabaab is at all interested in interfering with this trial or engaging in an act of violence that in any way threatens the physical safety of the jurors in this case. In the absence of any such evidence, there is nothing before the Court that is likely to cause a reasonable juror to fear for his or her own safety. This case, then, is no different from others involving serious charges and firearms where courts have *rejected* the government's request for an anonymous jury. See, *e.g., United States v. Coonan,* 664 F. Supp. 861 (SDNY 1987); *United States v. Gambino*, 818 F. Supp. 536 (EDNY 1993).

Even where pre-trial publicity or media coverage surrounding a case has been found to militate in favor of an anonymous jury, there must be a connection between the media coverage, the defendants, and risk or perceived risk that the defendants pose to the safety of the jurors. As explained in *United States v. Vario,* 943 F.2d at 240, and *United States v. Persico*, 621 F. Supp. 842, 878 (SDNY 1985), the anticipated media coverage can "enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public." Accord *United States v. Wong,* 40 F.3d 1347, 1377 (2d Cir. 1994); *United States v. Locascio*, 357 F. Supp. 2d 558, 563 (EDNY 2005).

Here, the government postulates that the jurors and their families may be exposed to harassment by the media or be frightened to sit in a case involving evidence of and/or allegations involving terrorist activities. Any concerns about the media's potential influence on the jury's verdict can be explored during *voir dire*, and any jurors who express reservations or concerns

6

about the press coverage can be fleshed out. Second, to the extent that the Court has a genuine concern that media figures will interfere with the trial by approaching or harassing jurors, the Court may either issue an order directing the media not to contact any jurors or their family members, or keep the jurors names and addresses from the press, as the court did in the well-known Martha Stewart case. *See ABC, Inc. v. Stewart*, 360 F. 3d 90 (2d Cir. 2004). *See also United States v. Quattrone*, 402 F. 3d 304, 311 (2d Cir. 2005) (in an effort to protect the integrity of a criminal trial, district court forbade members of the media from publishing, during the pendency of the trial, jurors' names that were disclosed in open court; in holding that the order violated the free speech and free press clause of the First Amendment, Circuit notes, "though the district court considered and rejected the possibility of an anonymous jury, the record does not demonstrate sufficient consideration of measures other than prior restraint that could have mitigated the effects of the perceived harm", and offers as an example, "emphatic warnings to the press and parties about the impropriety of contacting jurors during trial").

    Likewise, if any precautions must be taken to protect the jurors from either a fear for their own safety or the press, lesser measures suffice to protect against any imagined threat -- such as (1) an instruction that there has never been any criminal conduct by the defendants or any person either known to be associated with the defendants or acting on behalf of al-Shabaab in the United States; (2) an instruction that there is no evidence that the defendants or any person associated with the defendants or acting on behalf of al-Shabaab has the power to commit any violence in the United States; and/or (3) evidentiary rulings at trial that limit extraneous, unnecessary, irrelevant and/or cumulative but highly inflammatory evidence about acts allegedly committed by or in the name of al-Shabaab.

Conclusion

For all of the above stated reasons, neither an anonymous nor a partially sequestered jury is warranted. The government has not provided "a strong reason to believe that the jury needs protection" from the defendants or anyone else; and, even if the government had shown that the jury needs protection from the press (a proposition that, we submit, is wholly unsubstantiated), there are available "narrowly-tailored" alternatives that would not compromise defendant's fair trial rights. The Court should reject the government's assumption that an anonymous and sequestered jury is appropriate whenever it labels the defendants "terrorists" and calls up a "parade of horribles" committed by members of a designated foreign terrorist organization.

Empanelling a partially sequestered and/or an anonymous jury "undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence." *United States v. Wong,* 40 F.3d at 1376. Granting the government's motion will infringe on the defendants' rights under the Fifth and Sixth Amendments as neither procedure is justified in this case.

If, however, the Court disagrees and finds that an anonymous jury is in order, then it must take careful steps to minimize any potential prejudice to the defendant. See *United States v. Thai*, 29 F.3d at 801. Among these, the Court should employ a detailed juror questionnaire (proposed by and with input from both parties). The Court should also give the jurors non-prejudicial reasons for preserving their anonymity that refrain from signaling that Mr. Yusuf (or anyone else) poses a threat to their safety.

November 18, 2014                                        Respectfully submitted,


                                                   Jane Simkin Smith, Esq.
                                                  David Stern, Esq.